U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 2 8 2019

TONY R. MOORE, CLERK
BY: _____
DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT
# OF LOUISIANA

BRUCE COMMITTE,

        Plaintiff,

vs

VICKIE GENTRY,
 (personal capacity)

        Defendant

_____/

*1a-cv-0122*

FIRST AMENDED
COMPLAINT FOR
VIOLATION OF
ACADEMIC FREEDOM

    1.  Now comes Bruce Committe, Plaintiff, and files this complaint, suing defendant Vicke Gentry in her individual capacity and not her official capacity, alleging defendant Vickie Gentry violated Plaintiff's inalienable right to academic freedom otherwise protected by the free speech and free press clause of the U.S. Constitution's First Amendment, Fourteenth Amendment Due Process clause, and both privileges and

immunities clauses of the Fourteenth Amendment and Article
IV.

## JURISDICTION

2.   Plaintiff has a right to bring this action in this court
pursuant to 42 USC 1983.

3.Jurisdiction is correct because the complaint rests on
matters of federal law.  28 USC 1331 and1343.

4.Venue is correct in this court as the alleged events
occurred in Natchitoches, LA, and Plaintiff now lives in
Natchitoches.

## PARTIES

5.   At all times relevant to this complaint defendant Vickie
Gentry, Provost and Vice President for Academic Affairs,
Northwestern State University (hereinafter NSU), Caspari Hall,
Room 211, Natchitoches, LA 71497, was an actor of the State of

Louisiana.

6.  At all times relevant to this complaint Bruce Committe (BA accounting, MA accounting, PhD accounting, JD) was an assistant professor in the School of Business in the College of Business and Technology at NSU with over ten years of full time faculty experience in accounting, two years independent financial statement auditing experience,  twenty years of solo law practice experience, and a good research publication record.

## FACTS

7.  Approximately one half hour prior to Plaintiff teaching his first accounting class for the Spring 2019 term at NSU defendant Gentry was holding a meeting on or about 14 January 2019 in her conference room, with Plaintiff  and three others attending, the very purpose of which Plaintiff only discovered as the meeting progressed.

8. The purpose of the meeting called by Gentry was for Gentry to inform Plaintiff, in front of others at the meeting, that Gentry was pulling Plaintiff from his classes, which meant he would not be teaching the accounting classes to which he had been assigned for that term, or any other classes that term.

9. The reasons stated by Gentry were that (1) Plaintiff had chosen to use a book for his Accounting class #1040 which was not a book that the other accounting faculty had approved for use in that class and (2) Plaintiff's self-published syllabi, which describe Plaintiff's basic plans for how he would be conducting all of his assigned courses, including accounting #1040, how he would be measuring students' performances, what text book the teacher would be using and students would need to acquire, and objectives of the course did not meet the requirements of the University administration.

10.  Gentry had made her decision to pull Plaintiff from his classes many days earlier than the date of the meeting without discussing the matter or otherwise informing Plaintiff in any way of her concerns and decision to pull Plaintiff from his classes.

11.  With respect to item (1) above in par. 9, the approved book that Plaintiff was being required to use, instead of the self published book he planned to use,  was a Financial Accounting text published for-profit by McGraw-Hill book publisher.

12. A  McGraw Hill publisher sales agent, who resides on campus many days during the semester, had given the College of Business and Technology Dean who was also the Director of the School of Business ( a very long time employee of the University) several awards over the years, the last of which was given to her in 2014, and had provided all of the College of

Business and Technology and School of Business faculty their
lunch at least once in the very short time (one semester) that
Plaintiff had been on the faculty at NSU.

13.  When Plaintiff discovered that McGraw Hill publisher
had given the Dean of the College of Business and Technology,
who also was the Director of the School of Business at NSU,
several awards over the years, the last given in 2014, the
Plaintiff asked defendant Gentry to tell Plaintiff the nature and
amount of any dollar awards that had been given by McGraw
Hill publisher to the Dean and Director.

14.   Gentry refused to answer the above question which
Plaintiff asked her, and to this day has refused to answer the
question.

15.  The request was made several weeks prior to
Plaintiff's being removed from his classes.

16.  Plaintiff never asked , and does not know at this time, whether Gentry too received awards of any kind from McGraw Hill publisher.

17.  The Dean of the College of Business and Technology and Director of the School of Business had used the fact of having received the above mentioned Mcgraw Hill publisher awards in her application for the Deanship of the College of Business and Technology which application was successful.

18.  The McGraw Hill book which accounting faculty had approved for Accounting classes at NSU includes a learning system called "Connect" which requires a significant amount of individual faculty training time to learn such that after learning it the time invested becomes and became a strong reason not to want to change the class textbook for another publisher's textbook.

19.  Plaintiff, who arrived at NSU Fall 2018, had never been provided any mentioned training time.

20.  In effect, the "Connect" learning system is a sales gimmick to ensure that once a university or academic unit of a university adopts a McGraw Hill publisher text book the likelihood of that academic unit of the university "adopting" a different book for its classes is quite small because of the long time invested in the teacher learning the "Connect" learning system as well as the requirement that use of a new book would require other faculty at the university and outside of the university to agree to the new book.

21.  Thus, once a publisher like McGraw Hill gets its hooks into an academic program at NSU, the cash flow to McGraw Hill will continue unabated.

22.  All accounting textbooks are expensive, usually over

$200.

23.  The book Plaintiff was going to use for the first half of Accounting #1040 was to be provided free to students; the McGraw Hill book that is now being used by Plaintiff's replacement, and very much less academic credentialed teacher, for Accounting #1040 is expensive.

24.  Once students learn to use the "Connect" learning system sales gimmick in other classes they become attached to it such that learning-wise it becomes difficult for a faculty member to teach his or her classes using the professor's own learning system such as that which Plaintiff planned to use in Accounting class #1040 before he was removed from teaching classes Spring 2019.

25.  The failure of Gentry to inform Plaintiff that the purpose of the January 14 meeting was to remove Plaintiff from

his classes prior to the meeting taking place, her failure to discuss the provost's concerns with the Plaintiff prior to the above mentioned meeting, and conflict of interest the Dean and Director and possibly defendant Gentry as well had, and outrageous action of removing Plaintiff from his teaching assignment in the manner that it occurred, and to be replaced by a much less qualified and academic credentialed teacher causes the violation of Plaintiff's right to Academic Freedom, Free Speech, and Free Press to be an aggravated violation entitling Plaintiff to a large punitive damages award.

26.  As a result of Gentry's decision removing Plaintiff from teaching any classes, Plaintiff is not teaching any classes Spring 2019 semester and instead has been assigned other work that does not include teaching any accounting classes.

27.  The self-published text book Plaintiff had selected for

accounting #1040,  and the text book content of which Gentry was aware because she had access to its contents, is a book (free to Plaintiff's students) written and published by the Plaintiff which teaches the basics of introductory accounting, but, as no other introductory accounting text does, it includes existing political dimensions of  financial accounting procedures, principles, and rules employed in the financial accounting profession.

27.  The self-published text includes author's criticisms of current accounting principles, procedures, rules, and of current accounting practices while nevertheless teaching the NSU course catalogue description of the course.

28.  In many of their employments, accounting procedures, principles, and rules have the authority of federal law behind them, e.g., companies regulated by the federal securities laws.

29.  One example of the above mentioned political criticisms is: The financial accounting rules which public companies must follow in preparing their financial reports are not made in the way required by the U.S. Constitution; nor are they made in a manner required by U.S. statutes.

30.  A second example of the above mentioned political criticisms is: How can the so-called "independent" accountant auditors of public corporations be independent, as expressly required by the U.S. federal securities laws, if the company being audited chooses the auditor from among those vying to be its so called independent auditor and which company pays the auditor its audit fee which the company negotiates with the auditor under the threat that the reporting company is free to fire and replace the independent auditor with a different auditor who is more agreeable to the way the reporting company wants to

prepare its financial accounting reports for public presentation?

31.  No other commercial publishers' text books for introductory, or other, accounting courses state such truths as those in pars. 29 to 30 above.

32.  Notwithstanding the critical perspective nature of the accounting text Plaintiff planned to use in teaching his accounting classes, the syllabi, which are Plaintiff's published plans for teaching his classes, contained information which truthfully informed the reader that the classes Plaintiff would be teaching would teach the accounting knowledge and accounting procedures and principles as described in the University catalogue of courses.

33.  The mentions in pars. 29 to30 above that are in the self-published text for the accounting #1040 class and the content of Plaintiff's syllabi class planning documents for all the

courses he was to teach Spring 2019 term are matters of great public importance to society since financial accounting procedures and principles being learned by students  play a major role in how all companies prepare information for private and public consumption and for filing with the U.S. Securities and Exchange Commission by SEC registrant companies.  Such information affects how limited financial resources are allocated among companies vying for them in the securities markets all over the world.  The health and welfare of the local, US, and world economies are very much affected by this accounting information.

34.  Accounting report information is key in preventing and reducing fraud in the securities markets.

35.   Plaintiff's class syllabi published in this case for students and others to see are Plaintiff's plans, or a general

description, for how the course will be taught and how students'
performances in the class will be graded by the teacher.  The
syllabi at issue also identify the text books, if any, the Plaintiff
plans to use for his classes as well as identify homework
problem assignments.   The quality of financial information
used by investors and others is affected by accounting
procedures and principles learned by Plaintiff's students.
Accounting students today will be accounting practitioners of
tomorrow, and some will be involved in making the accounting
rules of tomorrow which reporting companies will have to
follow by law.

36.  Gentry had at sometime on prior occasions instructed
the accounting faculty, but not the Plaintiff who was not yet an
employee of NSU, to choose  text books that all faculty in each
academic area must use for all of the accounting classes taught

at NSU, and her insistence that they do that is a violation of Faculty member's Academic Freedom rights of any individual faculty members, like the Plaintiff,  who want to use other textbooks or teaching materials.

37.  No accounting faculty members had expressed any concern to Plaintiff about Plaintiff's choice of books for his Spring 2019 classes nor regarding the content of his published syllabi for his Spring 2019 classes.

38.  Other faculty have not complained about their Academic Freedom being taken away, or just having the administration decide how they will teach their classes and what text book they will have to use, because they are afraid administrators at the university will use their decision making powers (retention, pay, and tenure granting powers) to harm them, like Plaintiff is now being harmed.

39.  The reason for Gentry's instruction to faculty to adopt a standard text book for all faculty to use had to do, Gentry stated at the above mentioned meeting, with showing accreditation agencies that all students were receiving the same education apparently regardless of the particular instructor teaching individual classes, thus emphasizing conformity in teaching among the faculty and thereby throwing faculty member's Academic Freedom in teaching, including that of the Plaintiff, out the window and under the bus.

40.  But the accreditation agency for the university-wide accreditation expressly states in its policy documents that the accreditation agency supports faculty members' Academic Freedom.

41.  Accreditation is a voluntary process the State of Louisiana has chosen to seek while individual faculty member's

right to Academic freedom is an inalienable individual right protected by the U.S. Constitution via the First Amendment's free speech and press clause, Article IV's privileges and immunity clause, Fourteenth Amendment's privileges and immunity clause, and Fourteenth Amendment's due process clause.

42.  The same reasoning apparently was the cause of Gentry's instruction that course syllabi had to conform to a standard format and contain standard information.

43.  Accreditation can be achieved without violating faculty members', and Plaintiff's, Academic Freedom.

44.  Gentry knew or reasonably should have reasonably known, especially when she is the chief academic officer of the university, that removing Plaintiff from his teaching assignments for the reasons she stated, and perhaps for reasons

she did not state,  was a violation of Plaintiff's right to

Academic Freedom in teaching which is a right protected by the

several provisions of the U.S. Constitution.

45.  That the protected speech Gentry denied Plaintiff

included political speech directed to learning students some of

whom will be tomorrow's accountants and accounting rule

makers and most of whom will become tomorrow's business

persons making business decisions very much affecting the U.S.

and world economies which very much affect economic

resource allocations among members of society causes this

denial of Academic Freedom to be of great potential adverse

consequences to society.

46.  (continuation from par. 45) And this too is cause for

the court to grant a large award of punitive damages.

47.  At the meeting mentioned above on approximately 14

January 2019 and at a previous meeting weeks earlier Plaintiff
had passionately stated to Gentry that Academic Freedom and
Plaintiff teaching his classes the way he wants with teaching
material and text books  that the teacher wants were protected
by the First and Fourteenth Amendments to the U.S.
Constitution.

48.  In removing Plaintiff from his teaching assignments
Gentry was acting under color of state law.

49.  Removing Plaintiff from his teaching assignments was
an aggravated  violation of Plaintiff's U.S. Constitution
protected inalienable rights to free speech and free press.

50.  The violations, in the form of removing Plaintiff from
his teaching assignments, caused Plaintiff humiliation, injury to
his reputation as a teacher, loss of exercise of his academic
freedom which is very important to Plaintiff, and has injured his

prospects for future employment as a faculty member at NSU

and elsewhere for higher rank and pay and benefits.

51.  Title 42, section 1983 of the U.S. Code entitles

Plaintiff to bring this action.

52.  Title 42, section 1988 of the U.S. Code entitles

Plaintiff to attorney's fees, if any, and costs.

53.  Whether Plaintiff incurs attorney's fees is yet to be

determined.

54.  Defendant Gentry's removal of Plaintiff Committe

from his teaching assignments was an intentional, outrageous,

and wanton violation of Plaintiff's Academic Freedom in

teaching his classes otherwise protected by the U.S.

Constitution's First Amendment, Fourteenth Amendment Due

Process clause, and both privileges and immunities clauses of

the Fourteenth Amendment and Article IV.

55.  Punitive damages are necessary remind university administrators everywhere, but especially at NSU in the state of Louisiana, that university faculty have a U.S. Constitution protected right to academic freedom in teaching and research, and that individual faculty have a protected right to teach their students the way a teacher wants and to use whatever teaching materials and text books that the teacher wants, free from interference by administrators,  fellow faculty members of the university, and others.

56.  Punitive damages are necessary to show administrators and even teaching colleagues that Academic Freedom is the soul of a university, where ideas are king and queen, and that without Academic Freedom a university's college or school of business is without an academic soul and is merely an institution of uncritical, gussied up, white collar

vocational training (as opposed to true blue collar vocational training provided by institutes of vocational education which serves a critical need in society).

57.  Defendant Gentry is wont to state that NSU is a business organization when in fact it is not and is instead an institution of higher education;  Academic Freedom is a major difference between the two.

WHEREFORE Plaintiff demands judgment in his favor and against defendant Gentry for damages of one million dollars ($1,000,000.00), punitive damages of ten million dollars ($10,000,000.00),  plus attorneys fees, if any, and costs. Plaintiff also seeks a declaratory judgment from the court which states that Gentry violated Plaintiff's Academic Freedom rights.

JURY TRIAL DEMANDED.

Respectfully submitted by

Bruce Committe, Plaintiff Pro Se
100 N. Melrose Drive #604
Natchitoches, LA 71457-5931
(Must use all numbers in Zip Code)
Ph 850 206 3756
becommitte@hotmail.com

1/24/2019