UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BRUCE COMMITTE | * | CIVIL ACTION |
| | * | CASE: 6:19-CV-00122 |
| VERSUS | | |
| | * | JUDGE DEE D. DRELL |
| VICKIE GENTRY | * | MAGISTRATE JUDGE PEREZ-MONTES |

## RULE 12(b) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE

Defendant, Dr. Vickie Gentry ("Dr. Gentry"), moves – under Federal Rule of Civil Procedure 12(b)(6) – to dismiss the complaints (original and amended) for violation of academic freedom filed by the Plaintiff, Bruce Committe, due to their failure to state a claim upon which relief can be granted.  In the alternative, Dr. Gentry moves –under Rule 12(f) – to strike numerous allegations contained within the complaints.

Respectfully submitted,
JEFF LANDRY
ATTORNEY GENERAL

BY:     /s/ Jennie P. Pellegrin
JENNIE P. PELLEGRIN
La. Bar Roll No. 25207
jpellegrin@neunerpate.com
ELIZABETH BAILLY BLOCH
La. Bar Roll No. 37591
bbloch@neunerpate.com
NEUNERPATE
One Petroleum Center, Suite 200
1001 West Pinhook Road (zip 70503)
Post Office Drawer 52828
Lafayette, LA 70505-2828
TELEPHONE: (337) 237-7000  FAX: (337) 233-9450
Special Assistants Attorneys General and Counsel
for Dr. Vickie Gentry

Page 1

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, a copy of the Rule 12(b) Motion to Dismiss and Rule 12(f) Motion to Strike was filed electronically with the Clerk of Court using the CM/ECF system.  Additionally, a copy of the foregoing was sent by electronic mail to the plaintiff at becommitte@hotmail.com.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BRUCE COMMITTE | * | CIVIL ACTION |
| | * | CASE: 6:19-CV-00122 |
| VERSUS | | |
| | * | JUDGE DEE D. DRELL |
| VICKIE GENTRY | * | MAGISTRATE JUDGE PEREZ-MONTES |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS....................................................................................................i

TABLE OF AUTHORITIES ........................................................................................... ii

FACTUAL BACKGROUND...........................................................................................1

SUMMARY OF THE ARGUMENT ...............................................................................2

LAW & ARGUMENT

    1.    Fed.R.Civ.P. 12(b)(6) – Failure to State a Claim

        a.    First Amendment ..................................................................4
        b.    Fourth Amendment – Due Process .......................................6
        c.    Fourteenth Amendment & Article IV – Privileges and Immunities .......7

    2.    Fed.R.Civ.P. 12(f) – Motion to Strike ..............................................9

CONCLUSION...............................................................................................................18

CERTIFICATE OF SERVICE .......................................................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE**

*Abshire v. Boudreaux,*
  18-0205, 2018 WL 5316934 (W.D. La. 10/26/18) ...................................................................10

*Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.,*
  306 F.2d 862 (5th Cir. 1962) ...........................................................................................9

*Baldwin v. Fish & Game Comm'n of Montana,*
  436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed. 2d 354 (1978)...................................................8

*Brown v. Advocates of Academic Excellence in Education, Inc.,*
  17-5754, 2018 WL 1533009 (E.D. La. 2018)...........................................................4, 5

*Buchanan v. Alexander,*
  919 F.3d 847 (5th Cir. 2019) .........................................................................................4

*Connick v. Myers,*
  461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)...............................................4, 6

*Deubert v. Gulf Federal Savings Bank,*
  820 F.2d 754 (5th Cir. 1987) ......................................................................................7, 8

*Dorsett v. Board of Trustees for State Colleges & Universities,*
  940 F.2d 121 (5th Cir. 1991) .........................................................................................4

*Garcetti v. Ceballos,*
  547 U.S. 410, 418 (2006)............................................................................................5, 6

*Hall v. Louisiana,*
  12 F.Supp.3d 878 (M.D. La. 2014).................................................................................8

*Jones v. Louisiana Board of Supervisors of University of Louisiana System,*
  809 F.3d 231 (5th Cir. 2015) ......................................................................................6, 7

*Martin v. Parrish,*
  805 F.2d 583 (5th Cir. 1986) ......................................................................................4, 5

*Mitchell v. Beaumont Indep. Sch. Dist.,*
  1:05–cv–195, 2006 WL 2092585, 2006 U.S. Dist. LEXIS 55862 (E.D. Tex. 2006) ....................8

*Oller v. Roussel,*
  6:11-cv-002207, 2014 WL 4204836 (W.D. La. 2014) .............................................5, 6

*Pickering v. Bd. of Educ.*,
  391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ................................................................4, 6

*Stipe v. Tregre*,
15-2515, 2015 WL 5012375 (E.D. La. 2015) .................................................................9

*United States v. Coney*,
  689 F.3d 365 (5th Cir. 2012) .......................................................................................9

**STATUTES AND CODE ARTICLES & OTHER SOURCES**                                    **PAGE**

Article IV, U.S. Constitution ................................................................1, 3, 7, 8, 9, 18, 19

ERWIN CHEMERINSKY,
  CONSTITUTIONAL LAW, Fourth Edition, Wolters Kluwer 2013 ...........................................8

Fed.R.Civ.P. 12(b)(6)...................................................................................................4

Fed.R.Civ.P. 12(f) .........................................................................................................9

First Amendment ..................................................................1, 2, 4, 5, 6, 18, 19

Fourth Amendment .............................................................................1, 6, 18, 19

Fourteenth Amendment ......................................................................1, 3, 7, 9, 18, 19

42 U.S.C. § 1983 ..........................................................................................................4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BRUCE COMMITTE | * | CIVIL ACTION |
| | * | CASE: 6:19-CV-00122 |
| VERSUS | | |
| | * | JUDGE DEE D. DRELL |
| VICKIE GENTRY | * | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM IN SUPPORT OF RULE 12(b) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE

MAY IT PLEASE THE COURT:

Defendant, Dr. Vickie Gentry ("Dr. Gentry"), submits this memorandum in support of her: (1) motion to dismiss the complaints (original and amended) for violation of academic freedom filed by the Plaintiff, Bruce Committe, due to their failure to state a claim upon which relief can be granted, and (2) motion to strike various allegations.

### FACTUAL BACKGROUND

On January 28, 2019, Committe filed a complaint against the Provost and Vice-President for Academic Affairs at Northwestern State University ("NSU"), Dr. Gentry, asserting Section 1983 claims against her in her "individual capacity."[1] Committe claims that Dr. Gentry violated his right to academic freedom, free speech and free press under: (1) the First Amendment, (2) the due process clause of the Fourteenth Amendment, and (3) the privileges and immunities clauses of the Fourteenth Amendment and Article VI of the U.S. Constitution.[2] Specifically, Committe (who began his employment at NSU in the fall of 2018) alleges that Dr. Gentry relieved him

---

[1] Rec. Doc. 1, p. 2, paragraph 3; Rec. Doc. 3, pp. 1-2, paragraphs 1, 5.
[2] Rec. Doc. 1, p. 1, paragraph 1; Rec. Doc. 3, pp. 1-2, paragraph 1.

Page 1

from his teaching responsibilities and assigned him other duties at the start of the spring 2019 semester.[3]  Committe further alleges that he was informed of this decision during a meeting for which he allegedly received no notice.[4]

Committe maintains that he was removed from teaching because his anticipated and/or intended use of his self-published accounting book and syllabi which did not conform to NSU's administrative requirements.[5]  Committe unnecessarily claims that Dr. Gentry received financial awards and favorable treatment from a particular textbook publisher in exchange for requiring the NSU accounting faculty to use only that publisher's textbooks and related "Connect" software system for teaching the students.[6]  He goes on to allege that this bias motivated Dr. Gentry to violate his right to academic freedom through a ban on using his self-published textbook and syllabi – material that allegedly contained political criticism of the U.S. accounting system and other opinions that are a matter of public concern.[7]

### SUMMARY OF THE ARGUMENT

There is a recognized right to academic freedom under the First Amendment, but the Plaintiff fails to qualify for any such protection as an associate professor teaching accounting at a public university.  That is, he is not a private citizen speaking on a matter of public concern.

---

[3] Rec. Doc. 1, p. 3, paragraphs 5-6; Rec. Doc. 3, pp. 3-4, 10, paragraphs 7-8, 26.
Committe states in paragraph no. 6 of the amended complaint that he "was an assistant professor in the School of Business in the College of Business and Technology at NSU with over ten years of full time faculty experience," but it is important to note that Committe only began his employment at NSU in the fall of 2018. See Rec. Doc. 3, pp. 3, 6, 8, paragraphs 6, 12, 19.
Also important to note is that although Committe alleges that "he was removed from teaching classes [for the] Spring 2019," he "has been assigned other work." In other words, he still is employed at NSU. See Rec. Doc. 3, pp. 4, 9-10, paragraphs 8, 24-26.
[4] Rec. Doc. 1, pp. 3, 4-5, paragraphs 5-6, 8-9; Rec. Doc. 3, pp. 3-4, 5, 9-10, paragraphs 7-8, 10, 25.
[5] Rec. Doc. 1, p. 4, paragraph 7; Rec. Doc. 3, p. 4, paragraph 9.
[6] Rec. Doc. 3, pp. 5-9, paragraphs 11-24.
[7] Rec. Doc. 1, pp. 5-9, 13, paragraphs 11-15, 17-18, 27; Rec. Doc. 3, pp. 10-14, paragraphs 27-34.

To state a viable substantive due process claim necessarily requires that the Plaintiff allege that a public official acted arbitrarily or capriciously. Here, however, the Plaintiff clearly states that he is "suing . . . [Dr.] Gentry in her individual capacity and not her official capacity." Furthermore, the Plaintiff acknowledges in the complaints that his textbook and syllabi did not conform to NSU's requirements and therefore gave rise to his removal from the classroom. Thus, it cannot legitimately be asserted that any action taken by Dr. Gentry – even if taken officially – was arbitrary and/or capricious.

To ensure that procedural due process has been satisfied requires that one be given notice and an opportunity to be heard. It is apparent from the complaints that the Plaintiff met with Dr. Gentry at least once before the meeting in which he learned that his job duties were being altered.[8] And he has identified no obstacle to pursuit of any other administrative avenue or other review process available to him in his existing/continued employment. Thus, he fails to state a claim for a procedural due process violation.

The Plaintiff has not alleged that he is an out-of-state citizen who was discriminated against in favor of an in-state citizen. He also has not alleged that Dr. Gentry deprived him of any fundamental right arising by virtue of his national citizenship. Thus, he has failed to state a claim for a violation of any privileges or immunities under either Article IV of the Constitution or the Fourteenth Amendment.

---

[8] Rec. Doc. 1, pp. 13-14, paragraph 29; Rec. Doc. 3, pp.19-20, paragraph 47 ("previous meetings weeks earlier").

## LAW AND ARGUMENT

1. **FED.R.CIV.P. 12(b)(6) – FAILURE TO STATE CLAIM**

   a.   First Amendment

The U.S. Supreme Court has established that academic freedom is a special concern that falls under the First Amendment.[9]  However, to establish a claim under 42 U.S.C. §1983 for a First Amendment violation, a public university professor must show he was disciplined or fired for speech that is a matter of public concern and the professor's interest in the speech outweighed the university's interest in regulating the speech.[10]  Speech rises to the level of public concern if the "person speaks primarily as a citizen rather than as an employee."[11]  The Supreme Court instructs that:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, *a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior*.
> . . . .
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.[12]

While public employees do not surrender their rights under the First Amendment, they do not have unbridled authority to perform their jobs however they see fit.[13]  Specifically, the role of

---

[9] *Buchanan v. Alexander,* 919 F.3d 847, 852 (5th Cir. 2019).

[10] *See Id.* at 853 (5th Cir. 2019) (citing *Connick v. Myers*, 461 U.S. 138, 147–50, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and *Martin v. Parrish*, 805 F.2d 583, 584 (5th Cir. 1986)).

[11] *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991).

[12] *Id.* (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690 (citations omitted)) (emphasis added).

[13] *See Brown v. Advocates of Academic Excellence in Education, Inc.*, 17-5754, 2018 WL 1533009 at *1 (E.D. La. 2018) (quoting U.S. and Fifth Circuit jurisprudence) (dismissing a substitute high school teacher's claim against Ben Franklin High School on grounds that the teacher – who was terminated after engaging in a heated-debate with a student and using racially charged language – was not speaking as a private citizen on a matter of

the speaker must be that of a private citizen – not a public employee making a statement ***pursuant to his or her official duties*** – in order to be afforded the protections under the First Amendment.[14] Still, a determination about the rights of the speaker are tempered by a consideration of the rights of the audience and the public purpose serviced, or disserved, by the speech.[15]

If the audience is a captive one, such as a classroom filled with students, and the comments are made by one entrusted by the administration to provide a calm, controlled, and secure learning environment, the speaker's interest will not substantially outweigh the university's interest in regulating the speech.[16] In fact, the Western District reached this very conclusion in *Oller v. Roussel*, 6:11-cv-002207, 2014 WL 4204836 (W.D. La. 2014).

In *Oller*, a tenured professor in the Department of Communicative Disorders at the University of Louisiana at Lafayette ("UL") alleged a violation of his right to free speech resulting from UL's prohibition of his use of a self-published textbook. The plaintiff further claimed that UL retaliated against him (by not awarding him a prestigious professorship, by assigning him only one class to teach and by urging him to leave the department) because he spoke out on a matter of public concern regarding creationism, intelligent design, evolution, and the autism epidemic.

The district court ultimately concluded that the professor did not have a viable retaliation and/or infringement claim under the First Amendment based on *Pickering*, *Connick* and *Garcetti*.

---

public concern, relying on a review of a related press release, student-filmed video of the incident, an investigative report, and the school's academic freedom policy) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

[14] *Id.* at *2 (citing *Garcetti*, 547 U.S. at 418-23) (emphasis added).

[15] *Id.* (citing *Martin v. Parrish*, 805 F.2d 583, 585 (5th Cir. 1986)).

[16] *See Id.* at *2-*3.

Specifically, the court determined that the plaintiff could not establish a prima facie claim for a First Amendment retaliation claim because he did not allege or suffer one of the limited adverse employment actions identified by the Fifth Circuit.  Moreover, the court determined that UL's decision to not allow the plaintiff to use his self-authored textbook was not an actionable decision in which a federal court should get involved.[17]  Lastly, the court held that undesirable work assignments are not adverse employment actions.

Here, as in *Oller*, the Plaintiff does not have a viable freedom of speech or academic freedom claim because the activities at issue were undertaken as part of his official job duties as a teacher in a public university with a captive audience of accounting students.  This is not the type of speech that is to be protected under the *Pickering*, *Connick* and/or *Garcetti* analysis of academic freedom under the First Amendment.  Consequently, the Plaintiff's claims should be dismissed and leave amend denied because the deficiency in this instance cannot be cured through the filing of an amended and/or supplemental complaint.

b.   Fourth Amendment – Due Process

To allege a viable substantive due process claim against Dr. Gentry, the Plaintiff must aver that Dr. Gentry acted arbitrarily or capriciously and as a public official.[18]  Nevertheless, the Plaintiff expressly states that he is suing Dr. Gentry in her individual capacity only.  Additionally, the Plaintiff states in the complaint that Dr. Gentry relieved him from his teaching duties because his textbook and syllabi did not conform to NSU's requirements.  Thus, it cannot

---

[17] *Id.* ("The list of actionable decisions is limited so Federal Courts do not get involved in trivial matters. . . . [D]ecisions concerning teaching assignments, . . . departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation.")

[18] *See Jones v. Louisiana Board of Supervisors of University of Louisiana System*, 809 F.3d 231, 240 (5th Cir. 2015) (tenured professor's termination in light of budget cuts was not arbitrary or capricious).

be said that the decision to remove the Plaintiff from the classroom so lacked a basis in fact that it was made without professional judgment.[19]  It also is well-recognized that "a federal court is generally not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."[20]  In short, the Plaintiff fails under his own allegations to identify an actionable substantive due process claim.

A procedural due process claim arising from the employment of a university faculty member is thwarted by notice and an opportunity to be heard.[21]  Here, the Plaintiff's own allegations reveal that he was not deprived of procedural due process.  After all, he alleges that he had at least one opportunity prior to January 14, 2019 (the day on which the Plaintiff claims to have learned that he would no longer be teaching in the classroom) to explain to Dr. Gentry why he thought it was improper to disallow the use of his textbook and syllabi.  That meeting and the one on January 14th afforded the Plaintiff a couple of opportunities to voice his concerns and be heard on the matter.  Regardless, "federal courts . . . have been reluctant to impose due process requirements on public colleges and universities when doing so might compromise the state's ability to administer them effectively."[22]  This case warrants the same approach and necessarily warrants a dismissal of any procedural due process claim.

   c.   <u>Fourteenth Amendment & Article IV – Privileges and Immunities</u>

With respect to claims under the Fourteenth Amendment's privileges and immunities clause, it is recognized that:

> A claim under the Fourteenth Amendment's Privileges and Immunities
> Clause is to be narrowly construed.  *Deubert v. Gulf Federal Savings*

---

[19] *See Id.*

[20] *See Id.* (citations and quotations omitted).

[21] *Id.* at 236 (recognizing that this is the test for a tenured professor).

[22] *Id.* at 238 (citation omitted).

*Bank*, 820 F.2d 754, 760 (5th Cir. 1987). "The clause protects only uniquely federal rights such as the right to petition Congress, the right to vote in federal election[s], the right to interstate travel, the right to enter federal lands, or the rights of a citizen in federal custody." *Id.* Therefore, the key inquiry is whether the privilege claimed is one that arises by virtue of national citizenship. *Mitchell v. Beaumont Indep. Sch. Dist.*, 1:05–cv–195, 2006 WL 2092585, at *15–16, 2006 U.S. Dist. LEXIS 55862, at *48–49 (E.D. Tex. 2006) (citations omitted).[23]

With respect to Article IV of the Constitution, the Supreme Court makes clear that "the Privileges and Immunities Clause has been . . . interpreted to prevent a State from imposing unreasonable burdens on citizens of other States in their pursuit of common callings within the State; in the ownership and disposition of privately held property within the State; and in access to the courts of the State."[24]

Here, the Plaintiff has not identified any privilege arising by virtue of national citizenship. Additionally, he has not alleged that the State imposed unreasonable burdens on him, much less that he is an out-of-state citizen who was discriminated against in favor of an in-state citizen. Simply stated, he has not identified any privileges or immunities of which he has been deprived. Moreover, only the State – not an individual actor as Dr. Gentry is alleged to be – could commit such a deprivation. Yet the complaints identify no such State action. Hence, the Plaintiff fails to state a claim for deprivation of any privileges and immunities under either

---

[23] *Hall v. Louisiana*, 12 F.Supp.3d 878, 888 (M.D. La. 2014).
[24] *See Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed. 2d 354 (1978) (internal citations omitted) ("Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.")

*See also* ERWIN CHEMERINSKY, CONSTITUTIONAL LAW, Fourth Edition, Wolters Kluwer 2013, p. 505 ("The Supreme Court has interpreted this provision [Privileges and Immunities Clause of the Article IV § 2] as limiting the ability of a state to discriminate against out-of-staters with regard to fundamental rights or important activities.").

the Fourteenth Amendment or Article IV of the Constitution, and any such claims should be

dismissed.

## 2.   FED.R.CIV.P. 12(f) – MOTION TO STRIKE

Many allegations found within the complaints have no identified or conceivable relation

to the controversy.[25]  Moreover, several of the paragraphs (or portions thereof) in the Plaintiff's

complaints are redundant, immaterial, impertinent, or scandalous.

To be redundant, the statement:

> ". . . consists of allegations that constitute a needless repetition of other
> averments in the pleading."  Redundant matter should be stricken when
> "the allegations are prejudicial to the defendant or immaterial to the
> lawsuit. The mere presence of redundant matter, however, may not be a
> sufficient ground for granting a motion to strike when it does not affect the
> substance of the pleading."[26]

To be immaterial, the statement:

> ". . . has no essential or important relationship to the claim for relief or the
> defenses being pleaded."  "Immateriality is established by showing that
> the challenged allegations 'can have no possible bearing upon the subject
> matter of the litigation."  A court will not order allegations stricken "as
> irrelevant unless (1) there is no possible relation between the challenged
> portion of the pleading and the underlying controversy, and (2) the
> challenged portion of the pleading may prejudice the moving party."[27]

To be scandalous, the statement must offend the sensibilities.  Specifically, "[t]he

granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party

---

[25] *See Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); and *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (a motion to strike should be granted when the pleading to be stricken has no possible relation to the controversy).

[26] *Stipe v. Tregre*, 15-2515, 2015 WL 5012375, at *3 (E.D. La. 2015) (internal citations and quotations omitted.)

[27] *Id.* at *4.

by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety."[28]

With this background in mind, Dr. Gentry moves to strike the following paragraphs (some emphasis added) from the Plaintiff's amending (and superseding) complaint insofar as they purport to relate to some conspiracy-theory against the federal government, banks, and McGraw-Hill – allegations which are wholly immaterial to the Plaintiff's civil rights claims, and/or because they seemingly were incorporated into the complaint for no identifiable purpose that is pertinent to the claims asserted against Dr. Gentry:

11. With respect to item (1) above in par. 9, the approved book that Plaintiff was being required to use, instead of the self published book he planned to use, was a Financial Accounting text published for-profit by McGraw-Hill book publisher.

28. In many of their employments, accounting procedures, principles, and rules have the authority of federal law behind them, e.g., companies regulated by the federal securities laws.

29. One example of the above mentioned political criticisms is: The financial accounting rules which public companies must follow in preparing their financial reports are not made in the way required by the U.S. Constitution; nor are they made in a manner required by U.S. statutes.

---

[28] *Abshire v. Boudreaux*, No. 18-0205, 2018 WL 5316934, at *8 (W.D. La. 10/26/18).

30.  A second example of the above mentioned political criticisms is: How can the so-called "independent" accountant auditors of public corporations be independent, as expressly required by the U.S. federal securities laws, if the company being audited chooses the auditor from among those vying to be its so called independent auditor and which company pays the auditor its audit fee which the company negotiates with the auditor under the threat that the reporting company is free to fire and replace the independent auditor with a different auditor who is more agreeable to the way the reporting company wants to prepare its financial accounting reports for public presentation?

31.  No other commercial publishers' text books for introductory, or other, accounting courses state such truths as those in pars. 29 to 30 above.

33.  The mentions in pars. 29 to 30 above that are in the self-published text for the accounting #1040 class and the content of Plaintiff's syllabi class planning documents for all the

courses he was to teach Spring 2019 term are matters of great public importance to society since financial accounting procedures and principles being learned by students  play a major role in how all companies prepare information for private and public consumption and for filing with the U.S. Securities and Exchange Commission by SEC registrant companies. Such information affects how limited financial resources are allocated among companies vying for them in the securities markets all over the world.  The health and welfare of the local, US, and world economies are very much affected by this accounting information.

34.  Accounting report information is key in preventing and reducing fraud in the securities markets.

35.  Plaintiff's class syllabi published in this case for students and others to see are Plaintiff's plans, or a general

description, for how the course will be taught and how students' performances in the class will be graded by the teacher. The syllabi at issue also identify the text books, if any, the Plaintiff plans to use for his classes as well as identify homework problem assignments. The quality of financial information used by investors and others is affected by accounting procedures and principles learned by Plaintiff's students. Accounting students today will be accounting practitioners of tomorrow, and some will be involved in making the accounting rules of tomorrow which reporting companies will have to follow by law.

45. That the protected speech Gentry denied Plaintiff included political speech directed to learning students some of whom will be tomorrow's accountants and accounting rule makers and most of whom will become tomorrow's business persons making business decisions very much affecting the U.S. and world economies which very much affect economic resource allocations among members of society causes this denial of Academic Freedom to be of great potential adverse consequences to society.

49. Removing Plaintiff from his teaching assignments was an ==aggravated== violation of Plaintiff's U.S. Constitution protected inalienable rights to free speech and free press.

57. Defendant Gentry is wont to state that NSU is a business organization when in fact it is not and is instead an institution of higher education; Academic Freedom is a major difference between the two.

Furthermore, Dr. Gentry moves to strike the following allegations as immaterial and/or scandalous insofar as they are inflammatory and/or connote illegal, unethical, dishonest and/or unprofessional behavior that the Plaintiff wholly fails to substantiate with any underlying facts:

12. A McGraw Hill publisher sales agent, who resides on campus many days during the semester, had given the College of Business and Technology Dean who was also the Director of the School of Business ( a very long time employee of the University) several awards over the years, the last of which was given to her in 2014, and had provided all of the College of

Business and Technology and School of Business faculty their lunch at least once in the very short time (one semester) that Plaintiff had been on the faculty at NSU.

13.   When Plaintiff discovered that McGraw Hill publisher had given the Dean of the College of Business and Technology, who also was the Director of the School of Business at NSU, several awards over the years, the last given in 2014, the Plaintiff asked defendant Gentry to tell Plaintiff the nature and amount of any dollar awards that had been given by McGraw Hill publisher to the Dean and Director.

14.   Gentry refused to answer the above question which Plaintiff asked her, and to this day has refused to answer the question.

15.   The request was made several weeks prior to Plaintiff's being removed from his classes.

21.   Thus, once a publisher like McGraw Hill gets its hooks into an academic program at NSU, the cash flow to McGraw Hill will continue unabated.

24.  Once students learn to use the "Connect" learning system sales gimmick in other classes they become attached to it such that learning-wise it becomes difficult for a faculty member to teach his or her classes using the professor's own learning system such as that which Plaintiff planned to use in Accounting class #1040 before he was removed from teaching classes Spring 2019.

38.  Other faculty have not complained about their Academic Freedom being taken away, or just having the administration decide how they will teach their classes and what text book they will have to use, because they are afraid administrators at the university will use their decision making powers (retention, pay, and tenure granting powers) to harm them, like Plaintiff is now being harmed.

39. The reason for Gentry's instruction to faculty to adopt a standard text book for all faculty to use had to do, Gentry stated at the above mentioned meeting, with showing accreditation agencies that all students were receiving the same education apparently regardless of the particular instructor teaching individual classes, thus emphasizing conformity in teaching among the faculty and thereby throwing faculty member's Academic Freedom in teaching, including that of the Plaintiff, out the window and under the bus.

55. Punitive damages are necessary remind university administrators everywhere, but especially at NSU in the state of Louisiana, that university faculty have a U.S. Constitution protected right to academic freedom in teaching and research, and that individual faculty have a protected right to teach their students the way a teacher wants and to use whatever teaching materials and text books that the teacher wants, free from interference by administrators, fellow faculty members of the university, and others.

56.  Punitive damages are necessary to show administrators and even teaching colleagues that Academic Freedom is the soul of a university, where ideas are king and queen, and that without Academic Freedom a university's college or school of business is without an academic soul and is merely an institution of uncritical, gussied up, white collar vocational training (as opposed to true blue collar vocational training provided by institutes of vocational education which serves a critical need in society).

## CONCLUSION

The Plaintiff was not a private citizen speaking on a matter of public concern during the time in question and therefore fails to state a claim for violation of academic freedom under the First Amendment.  Additionally, the Plaintiff fails to state a viable claim for a violation of privileges and immunities under Article IV and/or the Fourteenth Amendment insofar as the complaints identify no violation of rights arising by virtue of national citizenship and/or state citizenship.  Furthermore, the complaint establish that the Plaintiff received notice of the intended action and at least one opportunity on which to be heard and/or voice his concerns and was given a reasonable explanation for the underlying decision, negating the possibility of a due process claim.  In the alternative and failing dismissal of the Plaintiff's claims, Dr. Gentry is entitled to have various allegations of the complaint(s) stricken as immaterial/impertinent and/or scandalous.

For the foregoing reasons, Dr. Gentry prays for dismissal under Rule 12(b)(6) of the

Plaintiff's claims for violation of his right to academic freedom, free speech and free press under:

(1) the First Amendment, (2) the due process clause of the Fourteenth Amendment, and (3) the

privileges and immunities clauses of the Fourteenth Amendment and Article VI of the U.S.

Constitution – all on grounds that the complaint fails to identify facts upon which relief can be

granted.  In the alternative, Dr. Gentry moves to strike various allegations under Rule 12(f).

<div style="margin-left:40%">

Respectfully submitted,
JEFF LANDRY
ATTORNEY GENERAL

BY:    */s/ Jennie P. Pellegrin*

JENNIE P. PELLEGRIN
La. Bar Roll No. 25207
jpellegrin@neunerpate.com
ELIZABETH BAILLY BLOCH
La. Bar Roll No. 37591
bbloch@neunerpate.com
NEUNERPATE
One Petroleum Center, Suite 200
1001 West Pinhook Road (zip 70503)
Post Office Drawer 52828
Lafayette, LA 70505-2828
TELEPHONE: (337) 237-7000   FAX: (337) 233-9450
*Special Assistants Attorneys General and Counsel*
*for Dr. Vickie Gentry*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, a copy of Dr. Vickie Gentry's Memorandum in

Support of Rule 12(b) Motion to Dismiss and Rule 12(f) Motion to Strike was filed

electronically with the Clerk of Court using the CM/ECF system.  Additionally, a copy of the

foregoing was sent by electronic mail to the Plaintiff at becommitte@hotmail.com.