UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

BRUCE COMMITTE                                CIVIL ACTION NO. 19-cv-0122

VERSUS                                        JUDGE DRELL

VICKIE GENTRY                                 MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Bruce Committe ("Plaintiff"), who is self-represented, filed this civil rights action against Dr. Vickie Gentry, the Provost and Vice President for Academic Affairs at Northwestern State University. Plaintiff alleged that Dr. Gentry violated his right to academic freedom because she would not allow him to teach an accounting class using his self-published textbook instead of the university-approved textbook. Before the court is Dr. Gentry's Motion to Dismiss (Doc. 35) based on failure to state a claim on which relief may be granted and qualified immunity. For the reasons that follow, it is recommended that her motion be granted.

**Relevant Procedural History**

Dr. Gentry earlier filed a motion to dismiss that attacked Plaintiff's first amended complaint. Plaintiff opposed the motion and asked for leave to file a second amended complaint to clarify his claims and allege new damages. The court granted Plaintiff leave to amend (Doc. 33), and his second amended complaint (Doc. 34) was filed.

The second amended complaint completely restated Plaintiff's allegations, from start to finish, in a 22-page, 54-paragraph pleading. It dropped some of the earlier allegations but added or clarified others. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994), citing Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985). Applying this rule, Plaintiff's second amended complaint is the only effective complaint, so the court will focus on the allegations in that pleading when assessing the motion to dismiss.

**Second Amended Complaint**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Plaintiff's second amended complaint invokes 42 U.S.C. § 1983 and is directed at Dr. Gentry in her individual capacity based on allegations that she "violated Plaintiff's inalienable and fundamental right to academic freedom otherwise protected by the free speech and free press clause of the U.S. Constitution's First Amendment combined with the Fourteenth Amendment's Due Process, Liberty, and Privileges and Immunities clauses." Second Amended Complaint, Doc. 34, ¶¶ 1-2.

Plaintiff alleges that he was an assistant professor in the school of business at NSU. He had over 10 years of faculty experience in accounting elsewhere, more than two years of independent financial statement auditing experience, and over 20 years of solo law

practice experience.[1] ¶ 6. He was assigned to teach four classes in the Spring 2019 semester. ¶ 7.

Approximately half an hour before his first accounting class, Plaintiff was notified of a meeting to be held in Dr. Gentry's conference room. He was not given notice of the subject of the meeting. Dr. Gentry and three other administrators were in attendance. Gentry told Plaintiff that she "was pulling Plaintiff from his classes, which meant he would not be teaching the accounting classes to which he had been assigned for that term, or any other classes that term." Plaintiff was not allowed to argue his interests. ¶¶ 7-12.

Plaintiff alleges that Dr. Gentry told him the reasons for her action were that (1) Plaintiff had chosen to use a self-published book for his accounting class #1040 that was not a book that the other accounting faculty had approved for use in that class and (2) she objected to Plaintiff's self-published syllabi for his classes that described his basic plans for how he would conduct his courses and measure student performances. ¶ 13. As a result of Dr. Gentry's decision, "Plaintiff did not teach any classes Spring 2019 semester and

---

[1] The Supreme Court of Florida disbarred a Bruce Edward Committee. The Fla. Bar v. Committe, 2016 WL 6652496 (Fla. 2016). The attorney had earlier been sanctioned and suspended for three years for filing a frivolous suit, refusing to comply with an order directing him to pay the defendant's attorney fees, and writing the United States Attorney a baseless request that the defendant be criminally prosecuted for attempting to extort money from him. Aggravating factors included a disciplinary history and submission of false evidence or statements during the disciplinary process. The Fla. Bar v. Committe, 136 So.3d 1111, 1118 (Fla. 2014). The same attorney was earlier suspended 90 days after being held in contempt in state court for not cooperating in discovery and filing a frivolous federal suit against opposing counsel. Florida Bar v. Committe, 916 So.2d 741 (Fla. 2005).

instead was assigned other work that did not include teaching any accounting classes." ¶ 17.

Plaintiff alleges that the self-published textbook that he selected for his class was free to his students and "teaches the basics of introductory accounting, but, as no other introductory accounting text does, includes existing political dimensions of financial accounting procedures, principles, and rules employed in the financial accounting profession." ¶ 18. Plaintiff states that the financial accounting rules that students learn arise and exist in a "heavily politicized setting," no other textbook even mention this politicized setting, and Plaintiff's book includes his "criticisms of current accounting principles, procedures, rules, and of current accounting practices while nevertheless teaching the NSU course catalogue description of the course." ¶¶ 19-21. Plaintiff adds that the administration had a conflict of interest because the publisher of the commercial book that Dr. Gentry wanted Plaintiff to use had given awards to the NSU dean on several occasions. ¶ 16.

Plaintiff's complaint provides examples of his political criticisms that are included in his book. He contends that the criticisms are matters of "great public importance to society," have "importance to the matter of social justice," and are "key in preventing and reducing fraud in the securities markets." The syllabi for the classes contain a general description of the course, describe how student performance will be graded, and identify the textbooks for use in the class. ¶¶ 22-32.

Dr. Gentry has invoked provisions of the NSU faculty handbook regarding the process for using a faculty-authored textbook. Doc. 38, p. 2. It is debatable whether this

extra-complaint material may be considered in a Rule 12(b)(6) contest, but by way of background, the handbook sets forth an extensive process that includes approval by a textbook selection committee, outside reviews, a formal recommendation by the dean, approval by the university president, and approval by the ULS Board.

Plaintiff alleges that Dr. Gentry told other accounting faculty—but not Plaintiff, who was not yet an employee of NSU—to choose textbooks that all faculty in each academic area must use for accounting classes. Plaintiff alleges that "her insistence that they do that is a violation of the Faculty member's Academic Freedom rights of any individual faculty members, like the Plaintiff, who want to use other textbooks or teaching materials." ¶ 33. Plaintiff alleges that other faculty have not complained about their academic freedom being taken because they are afraid administrators will harm them. He adds that no fellow faculty members expressed any concern to him about his choice of book. ¶¶ 34-35.

Plaintiff alleges that, in further denial of his academic freedom, Dr. Gentry informed him that his tenure track employment would end on May 13, 2019. It did, and no reason was given in writing. Plaintiff alleges that the termination of his employment to deny his academic freedom was an intentional violation of his constitutional rights protected by the First and Fourteenth Amendments. It caused him humiliation, injury to his reputation as a teacher, loss of exercise of his academic freedom, and injured his prospects for future employment as a faculty member at NSU and elsewhere. ¶¶ 36-51. Plaintiff prays for

recovery of compensatory damages of $5 million, punitive damages of $10 million, plus attorney's fees and interest.[2]

**Rule 12(b)(6); Qualified Immunity**

Dr. Gentry invokes Fed. R. Civ. Pro. 12(b)(6) and attacks Plaintiff's second amended complaint for failure to state a claim on which relief may be granted. To survive the motion to dismiss, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Phillips v. City of Dall., 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).). In reviewing, "[w]e accept all well pleaded facts as true and view them in

---

[2] Plaintiff has an extensive history of filing meritless suits against universities for alleged employment discrimination or civil rights violations. See, e.g., Committe v. Miller Nash Graham & Dunn, LLP, 2020 WL 410189 (D. Or. 2020) (Plaintiff filed multiple lawsuits against Oregon State University after he was not hired as an accounting professor, then he sued the university's lawyers for age discrimination and free speech violations); Committe v. John Carroll University, 2019 WL 2295347 (N.D. Ohio 2019) (Plaintiff sued university after he was not hired for a professor position; case dismissed, after which he moved to disqualify the judge); Bruce Committe v. Yen, 764 Fed. Appx. 68 (2d Cir. 2019) (Plaintiff sued SUNY for age discrimination and violating his right to academic freedom by requiring him to give a teaching demonstration when he applied for a job; moved to disqualify magistrate judge; dismissal affirmed); Committe v. Georgetown University, 2018 WL 4778927 (D. D.C. 2018) (Plaintiff filed age discrimination suit against university; motion to dismiss granted); Committe v. Terry, 2018 WL 4519319 (N.D. Tex. 2018), recommendation adopted, 2018 WL 4518660 (Plaintiff sued university officials after he was not hired as assistant professor of accounting at West Texas A&M University; case dismissed); Committe v. Jianping Zhu, 2017 WL 4512479 (N.D. Ohio, 2017) (Plaintiff sued employees of Cleveland State University for age discrimination; case dismissed). Additional cases that fit the pattern include Committe v. Miami Univ., 2017 WL 680633 (S.D. Ohio 2017); Committe v. Univ. of Cincinnati, 2016 WL 4944500 (S.D. Ohio 2016); Committe v. Bd. of Trs. of the Fl. State Univ., 2016 WL 4942015 (N.D. Fla. 2016); Committe v. Or. State Univ., 2016 WL 4374945 (D. Or. 2016); and Committe v. N. Mich. Univ., 2016 WL 8738358 (W.D. Mich. 2016).

the light most favorable to the plaintiff." Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1217 (5th Cir. 1985). A plaintiff must plead facts that reasonably support his or her legal conclusions. Shaw v. Villanueva, 918 F.3d 414, 416 (5th Cir. 2019).

When the court granted Plaintiff leave to file his second amended complaint, it instructed Dr. Gentry that, if she intended to assert the defense of qualified immunity, she should avoid serial motion practice by including that defense in any motion to dismiss directed at the second amended complaint. Gentry's motion made slight reference to qualified immunity in footnote 17, then her reply memorandum fully embraced the defense. It is not appropriate to raise a defense for the first time in a reply memorandum because the opponent does not receive a fair opportunity to respond. In this case, however, the motion did at least advert to the defense, and the objections period that follows this report and recommendation will allow Plaintiff an opportunity to respond that satisfies due process. Alexander v. Trump, 753 Fed. Appx. 201, 208 (5th Cir. 2018), citing Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (objection period allowed petitioner opportunity to respond to defense invoked sua sponte).

When a defendant asserts qualified immunity, the plaintiff must show that he has pleaded "facts which, if true, would overcome the defense of qualified immunity." Zapata v. Melson, 750 F.3d 481, 485 (5th Cir. 2014). The plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013). For a right to be clearly established, it must be beyond debate that the defendant's actions

were unconstitutional at the time they were taken. McCoy v. Alamu, 950 F.3d 226, 233 (5th Cir. 2020).

**Analysis**

It is helpful to begin with a discussion of what claims Plaintiff does or does not assert. Plaintiff's second amended complaint states over and over that he complains of a violation of his right to academic freedom, whether grounded in the First Amendment, the Due Process Clause, or the Privileges and Immunities Clause. His memorandum, (Doc. 37) makes this even more clear, with repeated arguments regarding the alleged violation of his right to academic freedom. If there were any doubt, Plaintiff states: "The subject of the complaint at bar is Academic Freedom in Plaintiff's teaching." Doc. 37, p. 9. He later states that the case is "about not only abridgement and denial of Academic Freedom (substantial due process of law) but also prior restraint by the Defendant." p. 19.

Dr. Gentry's motion attacks several potential claims or theories that Plaintiff might have asserted. Plaintiff's memorandum expressly disavows some of those theories. Plaintiff clarifies that his assertion of a violation of academic freedom is based on "a liberty interest not a property interest." p. 21. Plaintiff notes that Dr. Gentry argues that this is a case of employment denial. Plaintiff responds, "No, this is a case of a state actor denial of Plaintiff's fundamental right to academic freedom" and the "failure to rehire Plaintiff is just one of the several elements of damages alleged." p. 21. Dr. Gentry attacks any claim based on procedural due process. Plaintiff responds, "This is not a procedural due process case; it is a substantive due process case." p. 21. He adds that the right to academic

freedom he asserts is "a privilege and immunity which the Fourteenth Amendment protects." p. 22.

Plaintiff has clarified that he is suing Dr. Gentry in her individual capacity for monetary damages for violation of his right to academic freedom and an alleged prior restraint of speech. As explained below, Gentry's qualified immunity defense insulates her from those claims. The immunity "protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." Cass v. City of Abilene, 814 F.3d 721, 728 (5th Cir. 2016). The official is entitled to qualified immunity if, at the time the alleged act occurred, the official's conduct did not violate clearly established statutory or constitutional rights of which every reasonable person would have known. Mullenix v. Luna, 136 S.Ct. 305, 308 (2015).

Although the Supreme Court's case law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018), citing White v. Pauly, 137 S.Ct. 548, 551 (2017). In White, the Court reminded courts that clearly established law must be "particularized" to the facts of the case. The judgment of the appellate court was vacated because it relied on general constitutional principles that did not identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.

The specificity requirement was emphasized in McCoy, 950 F.3d at 232-33. A corrections officer was accused of spraying an inmate in the face with chemical spray for

no reason. The Fifth Circuit held that the spraying crossed the line and was an Eighth Amendment violation, but it was not beyond debate until the court's February 2020 holding that the action was unconstitutional. The officer was afforded qualified immunity. The court explained that it would not do for the plaintiff to point to the general principle that prison officers cannot act maliciously and sadistically to cause harm. Plaintiff must point to a published decision in which those principles were applied to similar facts and the official's actions were held unconstitutional.

"The [plaintiff] bear(s) the burden of showing that the right was clearly established." Garcia v. Blevins, ___ F.3d ___, 2020 WL 2078391, *2 (5th Cir. 4/30/20). Garcia was a police shooting case where Mr. Garcia was shot and killed after an officer ordered him to put down his handgun. Garcia refused, but he did put his hands up under the version of facts most favorable to the plaintiffs. The Fifth Circuit explained that it was not enough for the plaintiffs to argue that Mr. Garcia had a clearly established right "to be free from deadly force where he was not attempting to flee and did not pose an immediate threat to the officers, nor anyone else." That was too general a statement of law.

The Garcia plaintiffs pointed to a Fifth Circuit case where officers were held to have violated clearly established law by shooting a man who held a kitchen knife but made no movement towards the officers or any other threatening gestures. Not close enough; a knife is not a gun. The Fifth Circuit noted its recent decision that police violated clearly established law in 2010 when they shot someone who—though pointing a gun at his own head—made no threatening movements toward the officers, was facing away from the

officers, was not warned by the officers, and may have been unaware of the officers' presence. That, too, was not close enough to the Garcia facts to defeat qualified immunity.

This is not an excessive force case like Garcia or McCoy, but the qualified immunity analyses in those decisions demonstrate the heavy burden on Plaintiff to point to caselaw that made his right to academic freedom clearly established in the setting he alleges. And not just any court decision will suffice to make the law clearly established. The legal principle must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 138 S.Ct. 577, 589-90 (2018). Even a decision from the Fifth Circuit may not be enough if it is unpublished, because unpublished cases issued on or after January 1, 1996 are not precedent. Fifth Circuit Rule 47.5. Thus, unpublished Fifth Circuit decisions have been rejected as a basis for clearly establishing the law for purposes of qualified immunity. Marks v. Hudson, 933 F.3d 481, 486 (5th Cir. 2019); Defrates v. Podany, 789 Fed. Appx. 427, 435 (5th Cir. 2019).

Plaintiff cites a number of sources for his contention that Dr. Gentry's actions violated his constitutional right to academic freedom. First is a statement by the American Association of University Professors that protection of academic freedom is its core mission and that such freedom is the indispensable requisite for unfettered teaching and research in institutions of higher education. Plaintiff concedes that this pronouncement does not have the authority of law, but he urges that courts sometimes refer to academic pronouncements regarding academic values. Doc. 37, pp. 6-9.

Plaintiff's memorandum also includes a section dedicated to what he states is the "ruling case law on the subject of Free Speech and Academic Freedom." pp. 9-14. His

citations include <u>Reno v. Flores</u>, 113 S.Ct. 1439 (1993), which included a broad statement about substantive due process in the course of deciding whether an INS regulation regarding detention of juvenile aliens violated substantive due process. Plaintiff also cites passages from <u>Lovell v. Griffin</u>, 58 S.Ct. 666 (1938), which reversed the conviction of a person charged with violating an ordinance that prohibited the distribution of literature in the city without permission from the city manager. Another opinion cited by Plaintiff is <u>Garcetti v. Cebellos</u>, 126 S.Ct. 1951 (2006), which held that an assistant district attorney's memorandum that recommended dismissal of a case based on governmental misconduct was not entitled to First Amendment protection from adverse employment actions based on his writing. None of the authorities cited by Plaintiff address a situation anywhere near the facts in this case.

  Plaintiff points to Justice Souter's <u>Garcetti</u> dissent, which expressed concern about the potential breadth of the court's rationale. The justice wrote, "I have to hope that today's majority does not mean to imperil First Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write pursuant to official duties." <u>Id</u>., 126 S.Ct. at 1969. The majority responded that there was "some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence." The majority stated that it need not decide whether the analysis in <u>Garcetti</u> would apply in the same manner to a case involving speech related to scholarship or teaching. <u>Id</u>. at 1962. There is no indication the Supreme Court has returned to the issue and clearly established the law on the subject.

An article once explored "whether public college and university faculty have the right to choose the textbooks for their courses or whether the choice can be dictated by administrative decree." Edgar Dyer, MPA, JD, Textbook Selection and Public Higher Education: A 'Third Freedom' Derivative for Whom?, 109 Education Law Reporter 13 (1996). The author noted: "For the issue at hand, textbook selection at the college and university level, no jurisprudential literature is available; the American Association of University Professors has made no statement on the matter; and there is no existing case law specifically on point." That lack of case law supports Dr. Gentry's qualified immunity defense.

The cited article noted that some case law was available on textbook choice in public high schools, which presents a different set of issues. One such decision is Kirkland v. Northside ISD, 890 F.2d 794 (5th Cir. 1989), in which the court was "asked to decide whether the first amendment empowers public school instructors to teach from their own individual reading lists, in substitution for those supplied by schools as part of their official curricula, without first procuring administrative approval." The Fifth Circuit concluded that the teacher's use of a supplemental list was not protected speech and was a matter of private, not public, concern. The school was held to have a legitimate interest in shaping its own curricula and demanding that teachers adhere to the official reading list unless separate materials were approved. The Court noted that "the concept of academic freedom had been recognized in our jurisprudence, [but] the doctrine has never conferred upon teachers the control of public school curricula." Kirkland, 890 F.2d at 800.

Kirkland cited an earlier decision, Hillis v. Stephen F. Austin State University, 665 F.2d 547, 553 (5th Cir. 1982), which observed, "While academic freedom is well recognized, its perimeters are ill-defined and the case law defining it is inconsistent." (Internal citations omitted). Thus, a non-tenured art professor failed to make out a claim when he alleged that his academic freedom was violated by university officials who insisted he give a grade to a student whose work he had not reviewed.

Kirkland also cited a number of decisions in footnote 17 that tend to undermine Plaintiff's claim. See, e.g., Lovelace v. Southeastern Mass. Univ., 793 F.2d 419, 426 (1st Cir. 1986) ("first amendment does not require that each nontenured professor be made a sovereign unto himself" with respect to course content, homework and grading policy); Palmer v. Board of Educ., 603 F.2d 1271, 1273 (7th Cir. 1979) ("First Amendment [is] not a teacher license for uncontrolled expression at variance with established curricular content"); and Hetrick v. Martin, 480 F.2d 705, 709 (6th Cir. 1973) (first amendment not violated when school refused to rehire teacher because her teaching philosophy was incompatible with the pedagogical aims of university). Justice Alito, when on the Third Circuit, authored a similar decision in Edwards v. California University of Pennsylvania, 156 F.3d 488 (3rd Cir. 1998) ("we conclude that a public university professor does not have a First Amendment right to decide what will be taught in the classroom.").

A professor at the University of Louisiana at Lafayette filed a lawsuit that alleged university officials engaged in actions meant to remove him from his department and prevent him from spreading his views to students. He alleged a violation of the first amendment because, among other things, the university refused to allow him to use his

own textbook as a primary source material in classes that he taught. The Fifth Circuit affirmed summary judgment for the university. Oller v. Roussel, 609 Fed. Appx. 770 (5th Cir. 2015). The Court noted that it has "been particularly reluctant to interfere with decisionmaking in the academic context." Particularly relevant here, "declining to use Oller's textbook as primary material in a class is not an adverse employment action." Id. at 773. "The selection of a single textbook for a class with multiple sections taught by different professors is a departmental procedure and not a 'constitutional deprivation.'" Id., citing Dorsett v. Board of Trustees, 940 F.2d 121, 123 (5th Cir. 1991).

Plaintiff relies entirely on general statements and principles regarding a vague and unsettled right to academic freedom. A number of decisions cited above have held that university professors in similar situations did not have a constitutional right to demand the use of certain materials in teaching their courses. Plaintiff, who bears the burden of showing the law is clearly established in his favor, has not cited any controlling authority that clearly established a right to academic freedom that was violated by Dr. Gentry at the time she declined to allow him to teach his accounting classes with his unapproved self-published textbook. Given Plaintiff's lack of such authority, Dr. Gentry is entitled to qualified immunity from Plaintiff's claim of academic freedom.

Plaintiff makes a separate but related argument that Dr. Gentry violated his First Amendment rights by engaging in a "prior restraint." Plaintiff does not allege that he was precluded from saying or writing anything he wanted. He complains only that he was not allowed to use his textbook to teach an accounting class in the manner that he desired. Dorsett reviewed the claims of a Louisiana Tech professor who alleged that he was

retaliated against in violation of his First Amendment rights because he spoke out about various administrative decisions concerning teaching assignments, departmental procedures, and the like. The Fifth Circuit held that the professor's complaints reflected his concerns about class assignments and the like, which were concerns of a private rather than public interest. His personal grievances were not protected by the First Amendment. Dorsett, 940 F.2d at 124-25.

Dorsett undermines Plaintiff's First Amendment theory, and he cites no controlling authority that has found a constitutional violation in a university scenario similar to the facts he alleges. Plaintiff has not met his burden of demonstrating that Dr. Gentry is not entitled to qualified immunity with respect to such a claim. She is, therefore, entitled to dismissal of any claim based on this theory.

**Conclusion; Sanctions Warning**

Plaintiff's second amended complaint focused on his right to academic freedom and the allegation that it was abridged when he was not allowed to teach an accounting course with his self-published textbook. Plaintiff has not cited any controlling authority in which the actions of a university official in a similar setting have been held to violate the First Amendment right to academic freedom, right to free speech, or otherwise. Dr. Gentry is, therefore, entitled to qualified immunity with respect to all claims alleged against her.

Plaintiff has an extensive history of filing meritless lawsuits similar to this one. He also often files meritless motions to reconsider or to recuse judges after his complaint is dismissed. Such suits and motions are expensive for the defendants, which are often funded by the taxpayers, and they waste judicial resources that could otherwise be spent

on more timely resolution of the cases of deserving litigants. To prevent such abuses, the court has the authority to structure sanctions as are necessary or warranted to control its docket and maintain the orderly administration of justice. See Goldgar v. Office of Administration, 26 F.3d 32, 36 n.3 (5th Cir. 1994); Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993); Moody v. Miller, 864 F.2d 1178, 1179 n.2 (5th Cir. 1989). Plaintiff is warned that he will be subject to potential sanctions if he files frivolous or malicious motions or new suits in this court.

Accordingly,

It is recommended that Dr. Gentry's Motion to Dismiss (Doc. 35) be granted and that Plaintiff's complaint be dismissed with prejudice based on Dr. Gentry's entitlement to qualified immunity from all claims asserted in the Second Amended Complaint.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of May, 2020.

*Mark L. Hornsby*
U.S. Magistrate Judge